

McNees Wallace & Nurick LLC
100 Pine Street
Harrisburg, PA 17101

**Erik Roberts Anderson**
Direct Dial: 717.237.5420
Fax: 717.237.5300
eanderson@mcneeslaw.com

December 3, 2024

*Via ECF and email*
*Chambers_of_Judge_Joseph_F_Leeson_Jr@paed.uscourts.gov*

The Honorable Joseph F. Leeson, Jr.
United States District Court
Eastern District of Pennsylvania
504 W. Hamilton Street
Suite 3401
Allentown, PA 18101

Re: *Smith v. The Fintex Group, LLC et al.*
    **5:24-cv-02134-JFL**

Dear Judge Leeson:

As Your Honor will recall, this firm represents the Defendants/Counterclaim-Plaintiffs. Consistent with our best-faith understanding of and compliance with section 5(c) of the Initial Procedural Order (Doc. 3) and section II(B)(3) of Your Honor's Policies and Procedures, we write to respectfully request your guidance concerning a discovery dispute.

**The dispute.** On Oct. 23, Plaintiff served a Rule 45 subpoena—for a deposition and document production—on Loeb & Loeb LLP (a law firm) attention to Lloyd Rothenberg, Esq. (a Loeb & Loeb attorney).[1] It is undisputed that Loeb & Loeb LLP ("Loeb firm") served as counsel to Defendants at all times relevant. Attorney Rothenberg served as the ostensible lead attorney in the Loeb Firm's representation of Defendants.

In sum, the Oct. 23 subpoena requests a swath of documents—some of which we contend are fair game; some of which we contend are inarguably protected by the attorney-client privilege and/or work-product doctrine; and some of which we contend are arguably protected attorney-client privilege or work-product doctrine.

In our view, the dispute centers most acutely on the enforceability of certain Oct. 23 subpoena requests seeking facially privileged materials—held by the Loeb firm and/or Defendants—where, at the time they were created and/or at the time Plaintiff had access to them, Plaintiff was a part of

---

[1] Out of discretion, we have not included exhibits in this submission. We are glad to provide any exhibits if the Court wishes.

The Fintex Group's control group. We will refer to this category of documents as the "**Disputed Control Group Documents**."

**Defendants' position.** We contend that the attorney-client privilege bars Defendants' production of the Disputed Control Group Documents—despite Plaintiff's former access to them when he was a control-group member. The essence of the legal support for this position is that the privilege belongs to Defendants, and so Plaintiff's then-access to Disputed Control Group Documents does not function as a waiver of the privilege such that Plaintiff can re-access the Disputed Control Group Documents now.

This position is guided by the legal authority supporting it. And Defendants stand ready to brief the issue.[2]

**Plaintiff's position.** Broadly, we understand Plaintiff's position to be: *Once in the control group, always in the control group*. Thus, Plaintiff contends the Disputed Control Group Documents are not barred from disclosure.

**Counsels' efforts to resolve the dispute.**[3]

*First effort. Nov. 12.* Brian Graffeo and I spoke briefly after the status conference with Judge Carlos. We discussed our respective positions on the Disputed Control Group Documents and acknowledged the dilemma caused by our differing positions. I invited Mr. Graffeo to point out specific items on Defendants' privilege log for my evaluation.

*Second effort. Nov. 19.* By email, I sought counsel's concurrence in a Rule 45(d)(3)(a)(iii) motion to quash the Oct. 23 subpoena.[4] Mr. Graffeo politely noted Plaintiff's non-concurrence.

*Third effort. Nov. 19.* In response to Mr. Graffeo's note of non-concurrence, I wrote to counsel and asked if either of them—Mr. Graffeo or Ms. Komsa—had time to discuss the issue. I did not receive a reply.

*Fourth effort. Nov. 19.* I called Mr. Graffeo and Ms. Komsa to discuss the issue. It was after 5:00 p.m. So perhaps they were rightfully gone for the day.

---

[2] The Oct. 23 subpoena's due date is Dec. 5. Thus, under Rule 45(d)(3)(a)(iii), Defendants have until that date to move to quash. Given Your Honor's Order, Defendants will not so move without the Court's permission. *See* Doc. 3 at § 5(c). That said, Defendants are compelled to expressly preserve all their rights and waive none relative to Rule 45 compliance.

[3] Consistent with section II(B)(3) of Your Honor's Policies and Procedures, what follows in this portion of the submission is my "descri[ption] in detail [of] the efforts the parties made to resolve the dispute on their own." These descriptions are mostly summary and focus on the most relevant portions of the communications.

[4] Candidly, at that point in time, I had neglected to recall section 5(c) of the Initial Procedural Order and section II(B)(3) of Your Honor's Policies and Procedures, which explains my premature request for concurrence.

***Fifth effort. Nov. 20.*** I emailed counsel and explained that the reason for my calls from the evening before "was to meet and confer again on the discovery dispute related to Defendants' intention to move to quash" the Oct. 23 subpoena. Additionally, I invited Mr. Graffeo to point out specific items on Defendants' privilege log for my evaluation. I also offered to share the legal authority supporting Defendants' position on the Disputed Control Group Documents. My email concluded: "I am open to any suggestions you have concerning ameliorating the Loeb & Loeb subpoena dispute and avoiding motions practice. Happy to have a call anytime."

***Sixth effort. Nov. 20.*** Ms. Komsa replied, identifying four types of documents listed on Defendants' privilege log for my evaluation. Ms. Komsa also wrote that she would "be back shortly with some times to connect for a call to discuss." My records do not reflect that she followed through with this.

***Seventh effort. Nov. 20.*** I replied to each of Ms. Komsa's four items. I produced documents under two and provided explanations on the other two. I again offered to share the legal authority supporting Defendants' position on the Disputed Control Group Documents and suggested that counsel do the same relative to their position.

***Eighth effort. Nov. 25.*** I wrote to counsel: "Beyond the potential production of the Loeb invoices and the items addressed in red below, please let us know what else we can do to avoid moving to quash the Loeb subpoena."[5]

***Ninth effort. Nov. 26.*** Having not heard back on my Nov. 25 email, I followed up with counsel.

***Tenth effort. Nov. 29.*** I wrote to counsel: "Please let us know what else we can do to avoid moving to quash the Loeb subpoena, which comes due on Dec. 5. We have addressed each item that we can from your Nov. 20 list below. Even so, let us know if there is anything else we can [do]."

"If this dispute cannot be resolved in the next few days, I think Judge Leeson's Order (Doc. 3; snipped below) and his Policies and Procedures (snipped below) will be triggered. But let me know if you have a different read on things."

I also inserted into the email these three screenshots for counsel's convenience:

*****

**Highlights from Judge Leeson's Policies and Order:**

**Discovery Disputes - Telephone Conferences (from II. B.(3) of Leeson's Policies & Procedures):**
Counsel must exhaustively address all discovery disputes among themselves before requesting the Court's intervention. If the parties are unable to resolve a discovery dispute on their own, counsel are to initially send correspondence to the Court briefly

---

[5] The reference to "production of the Loeb invoices," is related to but distinct from the instant issue of the Oct. 23 subpoena. We have committed to producing these invoices under an agreed-to strictly limited waiver of privilege.

describing the dispute and the parties' respective positions and must certify that all counsel have already made a good faith effort to resolve the issue themselves as required by Local Rule of Civil Procedure 26.1, which must describe in detail the efforts the parties made to resolve the dispute on their own. The Court may thereafter schedule a telephone conference with counsel to address the dispute or direct the parties to file motions and briefs. If the parties are directed by the Court to file a motion, counsel must certify as part of the motion that all counsel have already made a good faith effort to resolve the issue themselves as required by Local Rule of Civil Procedure 26.1

**From Order dated 5/20/24 (Doc 3):**

> 2. **Mandatory Conference That Must Be Held Before *Any* Motion is Filed**
>
> Before *any* motion is filed—including motions under Federal Rule of Civil Procedure 12 and 56—counsel must contact opposing counsel to discuss thoroughly the substance of the contemplated motion and any potential resolution of it.[2] This conference must take place at least **five (5) days** before the motion is filed. If the parties are unable to resolve the issue without a motion, then the moving party must state in the motion the date this conference took place and certify that the parties were unable to resolve this issue during that conference. If opposing counsel does not oppose the motion, the moving party must so state in the motion.
>
> The only exceptions to this conference requirement are:
>
> (a) Discovery motions, which are addressed separately in section 5 of this order;
> (b) Applications for temporary restraining orders; and
> (c) The narrow category of cases that are exempt from ordinary case management and scheduling procedures under Local Rule of Civil Procedure 16.2.

> (c) **Discovery Disputes**: No motions related to discovery—including motions related to subpoenas served under Federal Rule of Civil Procedure 45—may be filed without the Court's permission. The Undersigned has adopted a specific procedure that must be followed to raise any discovery disputes, which can be found in section II(B) of the Undersigned's Policies and Procedures.[3]

*****

***Eleventh effort. Dec. 2.*** At 3:30 p.m., Ms. Komsa responded to my Nov. 29 email. Relative to the Oct. 23 subpoena she wrote:

> Additionally, Defendants' position regarding Mr. Smith is inconsistent. On one hand, Defendants assert that Mr. Smith was not an employee, officer, or director. On the other hand, they claim he was part of the control group. We have not been able to reconcile these positions, nor have we located any authority supporting this interpretation. We are available tomorrow to discuss these remaining issues. Please let us know if you'd like to schedule a time to confer.

***Twelfth effort. Dec. 2.***   Two hours later, I responded: "We're available from 10–12 tomorrow."

***Thirteenth effort. Dec. 3.***   Ms. Komsa replied: **"**Do you have availability after noon?"

***Fourteenth effort. Dec. 3.***   Thirty minutes later, my colleague Conner Porterfield, replied to Ms. Komsa:

> Hi Lauren,
>
> Erik is unavailable this afternoon. I would be happy to jump on a call with you to discuss. Alternatively, perhaps we can agree to push the deadline to respond to the Loeb third party subpoena to sometime next week while we work out these issues. Otherwise, we will need to file our letter with the court today regarding our impending motion to quash. Please let me know your thoughts.

***Fifteenth effort. Dec. 3.***   Having not heard back after several hours, Mr. Porterfield called Ms. Komsa. She did not answer.

***Sixteenth effort. Dec. 3.***   Mr. Porterfield followed up his phone call to Ms. Komsa with a final plea:

> Hi Lauren,
>
> I tried reaching you to discuss, but I got your voicemail. As I mentioned earlier, if we can't agree to push the response deadline so that we can continue to work these issues out, we will need to file our letter with the court. Please let us know if we can agree to continue to discuss these issues by 4:00pm today. Otherwise, we will need to file our letter.

As of this filing, this was the last correspondence on the instant matter.

*   *   *   *   *

Sincerely,

**McNEES WALLACE & NURICK LLC**

/s/*Erik R. Anderson*

Erik Roberts Anderson
Conner H. Porterfield

cc:   All Counsel of Record (via ECF and email)