## WILLIAMS, GRAFFEO & STERN, LLC

### ATTORNEYS AT LAW

**Glenn J. Williams** ❖◆☉■
**Brian Graffeo** ❖◆
**David A. Stern** ❖◆
**Robert Selvers** ❖◆
**Lauren E. Komsa** ❖◆▲
**Joseph R. Haftek, Jr.** ❖◆
**Skylar C. Corrao** ❖◆<
**Rachel R. Cohen** ❖◆
**Edward S. Nagorsky** ^+
**Martin Liberman** ❖◆❖+
**Harold I. Steinbach** ❖◆+
**Mark Boyland** ❖◆☉◄+
**Robert S. Roche** ❖+
**Kenneth Kaplan** ❖◆+
**Michael Wechsler** ❖◆+
**Daniel G.P. Marchese** ❖+●
**Len Garza** ❖◆☉+
**Andrew Jacobs** ❖+

60 Washington Street
Courthouse Plaza, Suite 204
Morristown, New Jersey 07960
Tel: 973.200.6350   Fax: 908.566.0777
www.WGSlawyers.com

New York Office:
462 Seventh Avenue, 12th Floor
New York, New York 10018

❖ Admitted New Jersey
◆ Admitted New York
☉ Admitted Pennsylvania
^ Admitted Florida
< Admitted Massachusetts
❖ Admitted Georgia
▲ Admitted California
◄ Admitted District of Columbia
■ Admitted United States Supreme
  Court
● Certified by Supreme Court of New
  Jersey as Civil Trial Attorney
+ Of Counsel

December 23, 2024

**VIA ECF**
Hon. Joseph F. Leeson, Jr. U.S. D.J. E.D. Pa.
United States District Court
Eastern District of Pennsylvania
Edward N. Cahn U.S. Courthouse and Federal Building
504 West Hamilton Street, Suite 3401
Allentown, Pennsylvania

> RE:   CHRISTOPHER SMITH VS. THE FINTEX GROUP, LLC AND ANDREW WEINSTEIN
>        CIVIL ACTION NO. 5:24-CV-02134-JFL

Dear Judge Leeson:

This firm represents Plaintiff Christopher Smith ("Plaintiff") in the above-captioned matter. Please accept this letter brief submitted in accordance with Your Honor's December 17, 2024, Order.

### I.     SUMMARY OF FACTS

Plaintiff filed a Complaint on May 17, 2024, which consisted of five causes of action stemming from Plaintiff's employment with Andrew Weinstein and The Fintex Group, LLC ("Defendants"). Defendant Andrew Weinstein approached Plaintiff about becoming part of his new entity, later named The Fintex Group, LLC. (Complaint ¶ 8). Defendant offered Plaintiff a position as a Senior Operating Partner with Defendant Fintex Group. Details regarding Plaintiff's compensation and other fees were to be included in a partnership agreement, which was to be drafted by Loeb & Loeb, LLC ("Loeb"). (Complaint ¶ 9). Plaintiff relied on Defendants' assurances and

RE: CHRISTOPHER SMITH V. THE FINTEX GROUP, LLC & ANDREW WEINSTEIN
     CIVIL ACTION NO. 5:24-CV-02134-JFL

accepted the position without the signing of a formal written agreement. Plaintiff devoted all of his time to working for Defendants and worked for nine (9) months without compensation based on Defendants' promises that payment would be imminent. (Complaint ¶ 10 and ¶ 11). Defendants have refused to pay Plaintiff for the work he completed resulting in Plaintiff sustaining significant losses. (Complaint ¶ 13).

Plaintiff served Defendants Andrew Weinstein and The Fintex Group, LLC ("Defendants") with their First Set of Requests for Production of Documents and Interrogatories on September 18, 2024. On October 18, 2024, Defendants served their first set of responses and objections, which were woefully deficient and withheld many crucial documents not protected by privilege. Defendants have since produced documents on a rolling basis and have admitted to continued production to occur but have yet to produce a significant amount of documents requested. In addition, Defendants have continued to be non-responsive with respect to  a majority of their responses to Plaintiff's Interrogatories. On or about October 23, 2024, Plaintiff served a Notice of Subpoena upon Loeb & Loeb, The Fintex Group's counsel. The Subpoena included requests for information and documents relating to the due diligence the firm performed and any discussions regarding compensation for Plaintiff, as well as documentation relating to the draft partnership agreement that was alleged to have been prepared by Loeb & Loeb.   Defendants have indicated they intend to quash the subpoena on the basis of attorney-client privilege. We note that, although the subpoena's return date was December 5, 2024, no motion has been filed.  The parties have attempted to work together to remedy this issue but have been unable to do so.

II.     THE DOCUMENTS AND INFORMATION SOUGHT BY PLAINTIFF ARE RELEVANT AND MUST BE PRODUCED

Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery on any matter not privileged which is relevant to the subject matter of the case. Fed.R.Civ.P. (26)(b)(1). The rules of discovery are meant to be "construed quite liberally so as to permit the discovery of any information which is relevant and reasonably calculated to lead to the discovery of admissible evidence. *Fid. Fed. Sav. & Loan Ass'n v. Flicetti*, 148, F.R.D. 532, 534 (E.D. Pa. 1993). The Courts have held that what is considered relevant is construed broadly and "encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issues that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947)).

Defendants' responses to Plaintiff's interrogatories and document demands highlight a complete refusal to produce discovery that is clearly relevant and should be produced.

1. Interrogatory 5, which asks whether any transaction completed by Plaintiff resulted in a monetary benefit to Defendants is relevant to Plaintiff's claim that the work completed by Plaintiff benefited Defendants.
2. Interrogatory 11 and Document Request 13, which asks Defendants to identify and provide documentation about other people who were promised compensation or employed by Defendant is relevant to determining if Defendants' refusal to fairly compensate Plaintiff is a pattern of behavior for Defendants and it helps to identify other possible people with relevant knowledge surrounding Defendants' promises of compensation.

RE: CHRISTOPHER SMITH V. THE FINTEX GROUP, LLC & ANDREW WEINSTEIN
    CIVIL ACTION NO. 5:24-CV-02134-JFL

3. Document Request 3 and 5 request documentation surrounding Plaintiff's role, duties, and compensation including any contracts or agreements between the parties, which is central to Plaintiff's claim that he was in fact an employee.

4. Document Request 7, 8, and 9 request documentation surrounding Defendants communications with third parties regarding Plaintiff and the targets he was working on, which is relevant to both Plaintiff's claims of employment and the specific work he was hired by Defendants to complete.

5. Document Request 10 and 11 requests documentation surrounding James Laurie, an advisor with Defendants, and his compensation agreements with Defendants. This request is relevant to determine how Defendants were paying other employees or advisors. Additional discovery produced to date indicates that Loeb & Loeb was preparing an agreement for Mr. Laurie, which included compensation provisions for catch-ups and preference payments; however, no such agreement or related documents have been produced.

6. Document Request 16, which requests all operating agreements and amendments, is relevant to determining the structure and identifying all the members of Defendant Fintex Group.

7. Document Request 10 (misnumbered on page 13) requests all communications regarding the hiring and compensation of Plaintiff. This is clearly relevant to Plaintiff's claim of employment and damages resulting from Defendants' failure to compensation Plaintiff.

8. Document Request 11 (misnumbered on page 13), which requests a complete .PST export of the email account Plaintiff had with Defendants, is relevant to prove Plaintiffs' employment and the compensation promises Defendants made via email.

9. Document Request 12, 15, and 16 (misnumbered on page 13), which requests all agreement between Fintex and anyone regarding the (a) HarmoneyPop (b) Global Payments (c) SnapB2B; (d) SnapB2B's Licensed Technology or derivative works therefrom, (e) IFI; (f) HarmoneyPop; (g)BaiaNet; (h) Kompliant; (i) iStream; and (j) Delvo, are relevant to Plaintiff's claims of employment and proof of the work completed by Plaintiff while employed by Defendants.

10. Document Request 33, which requested all communications concerning the termination of Plaintiff's involvement with Fintex, is relevant to Plaintiff's employment with Defendants and Defendants' refusal to compensate Plaintiff for the work he performed.

In addition, some of the documentation requested is also central to Defendants' own counterclaims. Defendants assert several counterclaim related to monies they were allegedly forced to expend as a result of Plaintiff's conduct.

1. Interrogatory 13 and 14 requests information about Defendants' claims about deficiencies or errors in the Due diligence reports prepared by Plaintiff that led to losses. These documents are relevant to Defendants' claims that they suffered losses as a result of Plaintiff's actions.

2. Interrogatory 18, which asks about communications surrounding Defendants' allegation that Plaintiff "alienated" IFI's CEO and caused harm to Defendants directly relevant to Defendants' claim for damages.

3. Interrogatory 19 asks for Defendants to explain the alleged correct measures that were taken as a result of Plaintiff's "deficiencies", which is directly relevant to Defendants' claim that more work needed to be done to correct Plaintiff's alleged mistakes, yet they have produced no documents, nor have they provided a full response.

RE: CHRISTOPHER SMITH V. THE FINTEX GROUP, LLC & ANDREW WEINSTEIN
  CIVIL ACTION NO. 5:24-CV-02134-JFL

4. Document Request 6, which asks for communications between Andrew Weinstein and Loeb relating to specific targets is relevant to the case at hand because Defendants claim that they were forced to retain Loeb to provide due diligence services as a result of Plaintiff's actions.

5. Document Request 14 asks for documents to support Defendants' allegation in their counterclaim that they had to use their own capital to execute a plan, yet Defendants have produced none.

6. Document Request 34, which requests all documentation reflecting Defendants' financial condition and ability to compensate Plaintiff, is relevant to Defendants' claims of losses and an inability to compensate Plaintiff.

The documents Defendants are withholding are central to Defendants' own counterclaim and therefore are relevant to the case at hand and should be produced. *See Carnegie Hill Fin., Inc. v. Krieger*, No. 99-CV-2592, 2000 WL 10446 (E.D. Pa. Jan. 5, 2000).

Allowing Defendants to continue to withhold these clearly relevant documents would be extremely prejudicial to Plaintiff because Defendants are in sole possession of documents necessary to prove Plaintiff's case, which they are unilaterally withholding. In addition, the parties have entered into a confidentiality agreement, which will protect all parties' documents from public view. These documents are relevant to both Plaintiff and Defendants' claims and therefore must be produced.

## III.    THE DOCUMENTS WITHHELD BY DEFENDANTS ARE NOT SUBJECT TO ATTORNEY CLIENT PRIVILEGE

Defendants have refused to produce most documents with Loeb &Loeb, LLC under the guise of attorney client privilege. Specifically, they have refused to produce relevant documents in response to Document Request 6 and 15 which ask for documentation and communication relating to the work Loeb completed for Defendants and they have indicated an unwillingness to allow Plaintiff's Subpoena to move forward. Defendants claim that the work completed by Loeb is protected work-product, or in the alternative protected attorney-client privilege.

Federal Rule of Civil Procedure 26(b)(3) provides that documents and other tangible items prepared in anticipation of litigation by or for a party's attorney are not discoverable. Fed.R.Civ.P. (26)(b)(3). The work-produce doctrine allows attorneys to work freely without the fear of their work being used against their clients. *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1428 (3d Cir.1991) (citing *Hickman v. Taylor,* 329 U.S. 495, 50-11, 67 S.Ct. 385, 393-94 L.Ed 451 (1947)). The work-product doctrine does not protect materials produced in the normal course of business or for other nonlitigation purposes. *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993). Defendants have failed to explain how due diligence and other services provided by Loeb were produced in anticipation of litigation.  The work completed was not prepared in anticipation of any specific litigation and was simply due diligence prepared prior to the purchase of specific target businesses. Defendants have produced no evidence or made any claims that would support this blanket assertion.

Attorney-client privilege is "the oldest of the privileges for confidential communications known to common law." *Upjohn Company v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Because the attorney-client privilege can obstruct the search for the truth, it

RE: CHRISTOPHER SMITH V. THE FINTEX GROUP, LLC & ANDREW WEINSTEIN
  CIVIL ACTION NO. 5:24-CV-02134-JFL

must be "strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979). The burden of proof that a communication is subject to attorney-client privilege lies with the party asserting such privilege. *In re Grand Jury Empanelled Feb. 14, 1978,* 603 F.2d 469, 474 (3d Cir.1979) (citing *United States v. Landof,* 591 F.2d 36, 38 (9th Cir.1978)).

Attorney-client privilege does not apply to every communication between clients and attorneys. The privilege only protects conversations in which the client seeks legal, not business advice or services. *SmithKline Beecham Corp.v. Apotex Corp.*, 232 F.R.D. 467, 479 (E.D. Pa. 2005) (citing to *Kramer v. Raymond Corp.*, Civ. No. 90–5026, 1992 WL 122856, at *1, 1992 U.S. Dist. LEXIS 7418, at *4 (E.D.Pa. May 26, 1992)). Business communications do not become protected legal advice simply because they are provided by an attorney. Defendants bear the burden of proving clearly that the communications in question were made for the express purpose of securing legal advice, not simply business advice. *Southeastern Pennsylvania Transp. Authority v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 259 (E.D. Pa. 2008) (quoting *AAMCO Transmissions, Inc. v. Marino,* 1991 WL 193502, at *2, 1991 U.S. Dist. LEXIS 13326, at *9 (E.D.Pa. Sept. 24, 1991)).

The legal due diligence completed by Loeb was business advice, and therefore not subject to the attorney-client privilege. Assessing a business's assets and liabilities in preparation for a purchase is not legal advice. As established above, Loeb's due diligence was not prepared in preparation for any litigation. Prior to Loeb's involvement, Plaintiff, who is not a licensed attorney, was responsible for completing the due diligence. Defendants have failed to prove that these documents are legal advice outside of the fact that they were prepared by an attorney.

If the documents are in fact subject to attorney-client privilege, Defendants have not proven that Plaintiff is within the class of people protected by Defendants' privilege. Attorney-client privilege will apply to employee communications when (1) were made to the corporate counsel, acting as such; (2) were made at the direction of corporate supervisors for the purpose of securing legal advice from counsel; (3) concerned matters within the scope of the employees' corporate duties; and (4) the employees were sufficiently aware that they were being questioned in order for the corporation to obtain legal advice. *Upjohn Co. v. U.S.*, 449 U.S. 383, 394-95 (1981). This rule is not absolute, and the attorney-client privilege can be waived if the communications are disclosed to employees who do not need access to them. *Smithkline*, 193 F.R.D. at 473 (quoting *Baxter Travenol Labs., Inc. v. Abbott Labs.,* No. 84 C 5103, 1987 WL 12919, at *5, 1987 U.S. Dist. LEXIS 10300, at *14 (N.D. Ill. June 19, 1987).

Throughout this matter, Defendants have maintained that Plaintiff was not an employee, officer, nor director of the Fintex Group, LLC. Defendants cannot maintain their claim that Plaintiff was not an employee and did not have any decision-making capabilities, while at the same time claiming that Plaintiff's communications with Loeb were within the scope of corporate attorney client privilege. If Plaintiff was not an employee and did not have decision making capabilities, then Defendants have waived their privilege as to any communications between Plaintiff and Loeb & Loeb, LLC by disclosing such communications to a third-party (Plaintiff) who did not need access to the documents, and the communications must be provided. In addition, Defendants have not proven that the communications involving Plaintiff were made to obtain legal advice as required by the law.

5

RE: CHRISTOPHER SMITH V. THE FINTEX GROUP, LLC & ANDREW WEINSTEIN
    CIVIL ACTION NO. 5:24-CV-02134-JFL

      Based on the foregoing, Plaintiff respectfully requests that Defendant be ordered to turn over all previously withheld documents because they are not privileged.

                Respectfully submitted,

                **WILLIAMS, GRAFFEO & STERN, LLC**

*Brian Graffeo*

_____
                Brian P. Graffeo, Esq.

cc: All Counsel of Record