**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER SMITH,** | : | |
| | : | |
| *Plaintiff/Counterclaim Defendant* | : | |
| | : | |
| v. | : | No. 5:24-cv-02134-JFL |
| | : | |
| **THE FINTEX GROUP LLC and** | : | **JURY TRIAL DEMANDED** |
| **ANDREW WEINSTEIN,** | : | |
| | : | |
| *Defendants/Counterclaim Plaintiffs* | : | |

---

**DEFENDANTS'/COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

**MᶜNEES WALLACE AND NURICK LLC**

Adam L. Santucci
Erik Roberts Anderson
Conner H. Porterfield
100 Pine Street
Harrisburg, PA 17101
(717) 232-8000

December 23, 2024

*Counsel for Defendants/Counterclaim
Plaintiffs*

## TABLE OF CONTENTS

## TABLE OF AUTHORITIES

## PROCEDURAL HISTORY

On May 17, 2024, Plaintiff Christopher Smith brought this case against Defendants. Plaintiff brings a claim against Fintex and Weinstein for fraudulent inducement (Count I) and claims against only Fintex for breach of contract (Count II), unjust enrichment (Count III), promissory estoppel (Count IV), and violations of the Pennsylvania Minimum Wage Act ("PMWA") and the Pennsylvania Wage Payment and Collection Law ("WPCL") (Count V). Doc. 1 ¶¶ 19, 21–23, 28, 30–31, 36.

Fact discovery closes the date of this filing and Defendants filed its Motion for Partial Summary Judgment accompanied by its Statement of Material and Undisputed Facts. Defendants now file this memorandum of law in support of the Motion for Summary Judgment.

## STATEMENT OF FACTS

Defendants incorporate their separate statement of material undisputed facts.

## STATEMENT OF QUESTIONS INVOLVED

**1.    Are Defendants entitled to summary judgment on Count I when Plaintiff cannot prove each elemental requirement of fraudulent inducement?**
Suggested Answer:        Yes.

**2.    Is Fintex entitled to summary judgment on Count II when Plaintiff cannot prove the existence of an implied contract, that a breach occurred, or what are his resultant damages?**
Suggested Answer:        Yes.

**3.    Is Fintex entitled to summary judgment on Count III when Plaintiff cannot establish the value of the benefit he conferred on Fintex, and no inequity exists?**
Suggested Answer:        Yes.

**4.    Is Fintex entitled to summary judgment on Count IV when Plaintiff cannot prove the existence of a sufficient promise that induced him and when there is no injustice?**
Suggested Answer:        Yes.

**5.    Is Fintex entitled to summary judgment on Count V (WPCL claim) when Plaintiff cannot prove the existence of an implied contract?**
Suggested Answer:        Yes.

## SUMMARY OF ARGUMENT

Defendants are entitled to summary judgment on Count I (fraudulent inducement) because Plaintiff cannot prove that Defendants made a specific representation to him that was made with knowledge of its falsity or recklessness as to whether it was true or false. Additionally, Plaintiff cannot prove that any representation made by Defendants was done so with the intent of misleading Plaintiff into relying on it, or that his reliance on Defendants' representations proximately caused any alleged injury sustained by Plaintiff.

Fintex is entitled to summary judgment on Count II (breach of contract) because Plaintiff cannot prove that an implied agreement existed between the parties, that a breach occurred, or what his resultant damages are (had Fintex breached a contract with him).

Fintex is entitled to summary judgment on Count III (unjust enrichment) because Plaintiff cannot prove that he conferred any benefit onto Fintex or that any circumstances exist such that it would be inequitable for Fintex to retain the "benefit" without repayment of value.

Fintex is entitled to summary judgment on Count IV (promissory estoppel) because Plaintiff cannot prove that Fintex made a promise that was sufficiently clear and definite that created a reasonable expectation to induce action or forbearance on Plaintiff's part, or that injustice can only be avoided by enforcing the "promise(s)."

Fintex is entitled to summary judgment on Count V (WPCL claim) because Plaintiff cannot prove the existence of an implied contract and, therefore, cannot prove what wages or benefits he is contractually owed.[1]

---

[1] Defendants do not seek summary judgment as it relates to Plaintiff's Pennsylvania Minimum Wage Act claim, which is also in Count V.

**LEGAL STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where there is no genuine issue of material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Once the moving party has carried its initial burden of showing no genuine issue of material fact exists, the non-moving party must establish the existence of every element necessary to his claim. *See Pastore v. Bell Tel. Co.*, 24 F.3d 508, 511 (3d Cir. 1994. If the non-moving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir.1992).

**ARGUMENT**

**I.    Plaintiff cannot prove fraudulent inducement.**

In Count I, Plaintiff asserts a claim for fraudulent inducement against Defendants. To establish the necessary elements of his fraudulent inducement claim, Plaintiff is required to demonstrate the following as to each Defendant: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179 (Pa. Super. 2005). That is not all. It is inherent to a fraudulent inducement claim that the allegedly aggrieved party entered into a contract with the accused party. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 206 (3d Cir. 2022) ("A claim for fraudulent inducement requires proof of the six elements and is available when a person under no duty to enter a contract was deceived into doing so.").

3

Because this claim sounds in fraud, Plaintiff has the heightened burden of providing each element by the heightened evidentiary standard of "clear, precise and convincing evidence." *Fort Washington Resources, Inc.*, 858 F. Supp. 455, 459 (E.D. Pa. 1994); *see also Rosemont Taxicab Co., Inc. v. Phila. Parking Authority*, 327 F. Supp. 3d 803, 830 (E.D. Pa. 2018) ("Because of the heightened standard of proof for fraud claims, in order to avoid a summary judgment the party with the burden must present evidence of fraud from which a jury could, by clear and convincing evidence, find such fraud.") (internal citations omitted).

### 1. Plaintiff did not enter into a contract.

As analyzed in Part II, *infra*, the record allows for no genuine dispute that Plaintiff did not enter into a contract with either Defendant. Unable to establish this threshold requirement, Count I fails.

### 2. Neither Defendant made a "representation."

The undisputed evidence lacks any statements made by either Defendant to Plaintiff that contain the requisite level of specificity to be considered a "representation." "Generally, 'non-specific statements regarding earnings and forecasts that are vague expressions of hope are not actionable.'" *Coleman v. Sears, Roebuck & Co.*, 319 F. Supp. 2d 544, 551 (W.D. Pa. Dec. 29, 2003) (quoting *In re Crown American Realty Trust Securities Litigation*, No. Civ.A. 95-202J, 1997 WL 599299, at *8 (W.D. Pa. Sept. 15, 1997)). Courts have held that "[c]ertain vague and general statements of optimism" are "not actionable as a matter of law because they constitute no more than 'puffery' and are understood by reasonable investors as such." *In re Burlington Coat Factory Securities Litiq.*, 114 F.3d 1410, 1428 n.14 (3d Cir. 1997). To be actionable, the statement must stray "from a general expression of hope" and foster "a belief in a specific and definite outcome." *Coleman*, 319 F. Supp. 2d at 551 (*quoting In re Crown American Realty*, 1997 WL 599299 at *8).

Examination of germane cases illustrates what is and what is not a "representation." In *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 350 (E.D. Pa. 2022), the defendant had referred to items it was selling as "New & Improved" and "High Quality." 647 F. Supp. 3d at 351. The court determined those

4

statements were not specific enough to constitute a representation, finding that they were "puffery" and "not made in absolute terms" or in a manner that could "be measurable or quantified." *Id.*

In *Overall v. Univ. of Pa.*, 412 F.3d 492, 499 (3d Cir. 2005), the declarant, an employee of defendant, had responded to the plaintiff's request that he "put odds" on her application for employment with defendant by stating "I'll work it out." 412 F.3d at 495. The court determined that this statement "fell short of a straightforward promise" and instead represented a more hopeful statement that he "would do all he could within reason to help" plaintiff's candidacy. *Id.* at 499.

In *Coleman*, the statements attributed to the defendants included statements that "Plaintiff 'would never be asked or required to enter into a franchise with defendant'; '[declarant] personally guaranteed in no uncertain terms that this would never happen'; Defendants 'falsely induced the Plaintiff to believe that he could operate a profitable and successful business under the contractual arrangement proposed by [the defendant]'; and Defendants 'falsely induced Plaintiff to believe he would have the opportunity to increase his revenue by entering into the contractual arrangement proposed by [the defendant]…'" 319 F. Supp. 2d at 551. The court observed that these statements utilized language indicating future predictions, and that the mere fact that those statements were not realized in the future did not create the basis for a fraud claim. *Id.*

In contrast, in *SodexoMAGIC*, the defendant had made false statements regarding its true future projections, which the court determined were actionable and distinct from when a person makes forward-looking statements that incorrectly predict the future. *SodexoMAGIC*, 24 F.4th at 211.

The statements by Fintex and Weinstein in the record are far more aligned with the forward-looking, unactionable statements made in *Kovalev*, *Overall*, and *Coleman* than the false statements regarding true projections which were considered a representation in *SodexoMAGIC*. In his Complaint, Plaintiff alleges that Fintex made representations regarding "significant equity stakes, substantial shares in the company's financial success, prestigious board seats, advisory roles in target companies, and substantial financial compensation." Doc. 1 ¶ 16. But the record is without any statements by

Fintex or Weinstein on these subjects containing the requisite level of specificity to be considered a "representation." Instead, the record demonstrates that, like the defendant in *Coleman*, Weinstein merely made vague predictions and general statements of optimism regarding the future prospects of Fintex and Plaintiff.

### 3.    Neither Defendant made a knowingly or recklessly false statement.

Representations of estimates or forecasts "may be actionable misrepresentations if the speaker does not genuinely and reasonably believe them." *In re Donald J. Trump*, 7 F.3d 357, 368 (3d Cir. 1993). "[F]orward-looking statements typically cannot constitute misrepresentations for purposes of a fraud claim." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 211 (3d Cir. 2022).

In *SodexoMAGIC*, the plaintiff entered into a contract with defendant after reviewing a projection of defendant's future student enrollment. *Id.* at 206. The defendant had provided one set of projections regarding future student enrollment to the plaintiff and used a different set of projections for its internal purposes. *Id.* at 206. In that case, the evidence demonstrated that employees of the defendant were aware student enrollment was projected to decrease at the time that the defendant made representations to plaintiff that enrollment would increase. *Id.* 206–07. The court noted that, "while not airtight, this evidence would allow a reasonable jury to conclude" that the defendant misled the plaintiff until after they entered into a contract. *Id.* at 207. Unlike the evidence in *SodexoMAGIC*, the evidence in this case does not contain any indication that Weinstein or Fintex had any reason to believe the statements they made to Plaintiff were false.

In *Coleman*, the alleged fraudulent statements, recounted above, were "replete with predictions of future events," and the court held that such predictions "cannot serve as a basis for a fraud claim simply because the statements are not realized in the future." *Coleman*, 319 F. Supp. 2d at 551. The court held that the plaintiff had failed to provide clear and convincing evidence regarding the defendants' knowledge or recklessness as to the falsity of the statements where, "absent any deposition testimony of [the speaker]'s purported knowledge . . . which is lacking in the record." *Id.* at 552.

4913-9848-4745, v. 2

So too here. The undisputed evidence shows that Fintex and Weinstein did not make any statements with knowledge or recklessness with respect to their falsity. On the contrary, the undisputed evidence definitively shows that Fintex and Weinstein firmly believed every statement made to Plaintiff. Clear and convincing evidence to support this element does not exist.



Weinstein told Plaintiff—and all individuals associated with Fintex— ███████████ ████████████████████████████████████████████████████████ SMF ¶ 12, Exhibit B. Weinstein subsequently told Plaintiff individually that ███████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████. SMF ¶ 15, Exhibit D. In that email, Weinstein relayed ███████████████████████████████████████████████████ ████████████████████. *Id.*

███████████████████████████████. But Weinstein's statement that ██████████████ █████████████████ was reasonable, based █████████████████████████████████████ ████████████████████. SMF ¶ 15, Exhibit E; Exhibit GG at ¶ 28. Weinstein made that statement without any knowledge that it was false or recklessness as to whether it was true or false.

As the GPN deal advanced closer to its expected closing, Weinstein demonstrated that he meant what he said regarding creating a partnership agreement following the closing. He ████████████████ ████████████████████████████████████████████████████████████████████████████ █████ SMF ¶ 18, Exhibit F. But Plaintiff abruptly ended his relationship with Fintex during that offsite meeting and did not participate in the remainder of the planned offsite. SMF ¶¶ 26-27, Exhibit G.

**4.    There is no clear and convincing evidence that either Defendant intended to mislead Plaintiff.**

Even if any of the statements made by Fintex or Weinstein could be construed as false (which they cannot), the undisputed evidence fails to demonstrate that Fintex and Weinstein intended to mislead Plaintiff. Courts have found evidence of intent to mislead where the evidence demonstrated

the defendant actively deceived the plaintiff through an affirmative misrepresentation. *See, e.g.,* *Skurnowicz v. Lucci*, 798 A.2d 788, 794 (Pa. Super. 2002) (finding intent where the defendants were asked about flooding problems on a property disclosure statement and knowingly lying about them). In contrast, courts have found no evidence to satisfy the intent element where there was no finding that a declarant "made an affirmative misrepresentation . . . with knowledge that it was false." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999); *see also Kostryckyj v. Pentron Lab. Technologies, LLC*, 52 A.3d 333, 340 (Pa. Super. 2012) (holding there was no evidence of intent to mislead where there was no evidence that the defendant "actively deceived" the plaintiff).

In *Coleman*, the plaintiffs attempted to demonstrate intent through the fact that the statements were made on more than one occasion. *Coleman*, 319 F. Supp. 2d at 552. The court concluded that, even after providing all inferences in favor of the plaintiff, the plaintiff had not provided clear and convincing evidence that the statements were made with the intent to induce the plaintiff to act in a certain manner. *Id.*

Fintex and Weinstein demonstrably expected Plaintiff—like all members of Fintex—would share in Fintex's successes and or failures to the extent that Plaintiff remained with Fintex. When Plaintiff voluntarily left Fintex, he voluntarily left behind the opportunity to share in Fintex's successes or failures. The fact that Plaintiff voluntarily abandoned that opportunity does not mean that Weinstein and Fintex intended to mislead Plaintiff when they made statements that assumed Plaintiff would stay the course through Fintex closing its first deal.

The evidence demonstrates Weinstein and Fintex intended for Plaintiff to share in Fintex's successes and failures under the assumption that Plaintiff would still be with Fintex at the time their first deal would close. The March 16, 2023 email stated ███████████████████████████ ███████████████████████     SMF ¶ 12, Exhibit B. Weinstein's statement regarding ███████ ████████████████████was clearly predicated on the SNAX deal going through, which ultimately did not occur. In June, Weinstein again told Plaintiff that renumeration would begin ██████████████

8

███ SMF ¶ 15, Exhibit D. Weinstein meant what he said, as demonstrated when Plaintiff contemplated leaving Fintex on September 2, 2023, Weinstein told Mr. Laurie that they were aligned when Mr. Laurie said, ████████████████████████████████████████

████████████████ SMF ¶ 25, Exhibit H; SMF ¶ 36, Exhibit X.  These messages demonstrate that Weinstein intended for Plaintiff to share in Fintex's successes if he were to stay associated with Fintex—and therefore, Weinstein never intended to mislead Plaintiff.

    **5.**    **Plaintiff did not rely on representations by either Defendant.**

Further, Plaintiff has not produced evidence demonstrating that he justifiably relied on representations by Fintex and Weinstein. In fact, the evidence shows that Smith clearly understood that the potential to make money with Fintex was high-upside, risky, and not guaranteed.

Whether reliance is justified "depends on whether the recipient knew or should have known that the information supplied was false." *Coleman*, 319 F. Supp. 2d at 552.  In *Coleman*, the court found that the plaintiff "could not, as a matter of law, have reasonably relied on any statements made by Defendants" regarding the possibility of a future relationship when the discovery revealed that the underlying agreement between the parties might not have any relationship at all between the parties in the future, particularly when the plaintiff was an "experienced business person." *Id.* at 552–53.

Plaintiff's February 14, 2023 email is powerful evidence that Plaintiff fully understood any remuneration he would receive due to his relationship with Fintex would be earned after Fintex closed deals. Specifically, Plaintiff ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ SMF ¶ 11, Exhibit I. Further, in the same email, Plaintiff explained that he ████████████████████████████ *Id.* This email shows that, from the very beginning, Plaintiff understood his ability to profit from the Fintex relationship was tied to staying associated with Fintex *after* Fintex successfully closed deals.

4913-9848-4745, v. 2

Plaintiff made numerous other statements that appear in the record, demonstrating that Plaintiff understood his ability to profit was tied to the "upside" following successful deals. For example, on April 8, 2023, Weinstein explained ████████████████████████████████████████ ████████████████████████████████.[2] Weinstein explained, ███████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████ SMF ¶ 13, Exhibit J. In response, Plaintiff said, █████████████████████████████████████████████████████████ ████████████████████ *Id.* (emphasis added). The record demonstrates that Plaintiff did not expect remuneration in the event he left Fintex before any deals closing and, therefore, did not rely on any purported misrepresentations by Fintex or Weinstein regarding his earnings.

In his Complaint, Plaintiff alleges that, in reliance upon Fintex's "representations" and "commitments," Plaintiff ceased consulting business operations. Doc. 1 ¶¶ 13, 19. But Plaintiff's own statements in the record indicate that ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████. SMF ¶ 4, Exhibits K, DD at p. 1. Further, the Linchpin Company, LLC's activities ended in December 2022, *before* Weinstein and Plaintiff ever discussed Plaintiff being involved with Fintex. SMF ¶¶ 4-7, Exhibits K, L, EE ████████████████████████████ █████████████████████████████. Specifically, Plaintiff stated the following regarding ██ ████████████████████:

- On September 18, 2022, Plaintiff told Weinstein: ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[2] "SNAX" was the proposed name of the company resulting from the potential merger of SnapB2B and ActiveWorx, which was a deal Plaintiff spent several months working toward before it ultimately fell through. Exhibit GG at ¶ 18.

[3] Baia was a company with which Fintex was seeking to broker a deal at the time Weinstein made this statement. Exhibit GG at ¶ 17.

██████████████████████████████████████████████

████████ SMF ¶ 4, Exhibit Y.

- On September 23, 2022, Plaintiff told Weinstein: ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

SMF ¶ 4, Exhibit Z.

- On September 28, 2022, Plaintiff told Weinstein: ██████████████

██████████████████████████████████████████████ MF ¶ 4,

Exhibit AA.

- On September 29, 2022, Plaintiff told Weinstein: ███████████████

██████████████████████████████████████████████

SMF ¶ 4, Exhibit BB.

- On September 30, 2022, Plaintiff told Weinstein: ███████████████

██████████████████████████████████████████ SMF ¶ 4, Exhibit

CC.

- On December 2, 2022, Plaintiff told Weinstein: ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████ SMF

¶ 4, Exhibit DD at p. 1.

- On December 31, 2022, Plaintiff sent an email to David Swann saying: ███████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████ SMF ¶ 4, Exhibit DD at p. 2.

- On December 28, 2022, Plaintiff sent an email to numerous individuals associated with
  Convera, saying: ███████████████████████████████████████

████████ SMF ¶ 4, Exhibit DD at p. 3.

**6.    Plaintiff cannot prove that he suffered an injury.**

First, the record does not demonstrate any injury suffered by Plaintiff. Upon proving each of

the requisite elements, "a fraud plaintiff may recover compensatory damages." *SodexoMAGIC*, 24

F.4th 183 at 205.[4] Plaintiff's inability to establish an injury is discussed in Part II.3, *infra*.

---

[4] A successful fraud plaintiff may also recover punitive damages by showing that the defendant had
acted in an outrageous fashion due to either the defendant's evil motive or reckless indifference to the
rights of others. *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (internal quotations omitted).
The Third Circuit has recently applied the clear-and-convincing evidence standard of proof to whether

Even if Plaintiff did suffer injuries as a result of his relationship with Fintex, because Plaintiff did not justifiably rely on any misrepresentations by Fintex or Weinstein, as detailed in Parts I.2–5 *supra*, the sixth element necessarily cannot be satisfied, and Plaintiff is not entitled to damages. Specifically, Plaintiff cannot demonstrate proximate cause between Plaintiff's purported injuries and Defendants' purported representations.

In *Coleman*, the court determined that to the extent the plaintiff "suffered," it was the "consequence of the inability of the parties to amicably reach an agreement." *Coleman*, 319 F. Supp. 2d at 553. Then, the plaintiff "decided not to re-enter into a business arrangement with Defendants[,]" so the court concluded that the plaintiff had "failed to show with clear, precise, and convincing evidence how the alleged misrepresentations proximately caused damages to the Plaintiff." *Id.*

Similarly, here, to the extent that Plaintiff suffered by not earning any financial gain resulting from his relationship with Fintex, it was the result of Plaintiff's decision to end his relationship with Fintex: (1) before a formal business arrangement was devised; and (2) before any opportunity to earn materialized through the closing of a deal.

## II.    Plaintiff cannot prove breach of contract.

Plaintiff's claim in Count II for breach of contract against Fintex cannot be proven. Under Pennsylvania law, breach of contract claims contain three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

As maintained by Defendants throughout this litigation, no express or implied contract existed between Plaintiff and Fintex. Indeed, extensive discovery in this case has uncovered no evidence that

---

outrageous conduct is present to give rise to punitive damages. *SodexoMAGIC*, 24 F.4th at 208, n. 3. There is no evidence of outrageous conduct by Weinstein and Fintex.

the parties ever had a meeting of the minds and agreement regarding the essential terms of any agreement related to Plaintiff's association with Fintex. Even if Plaintiff could prove that an implied agreement existed between him and Fintex (which he cannot), there is no evidence that Fintex breached any terms of this theoretical agreement, as Plaintiff's involvement with Fintex resulted in **zero** monetary benefits to Fintex, and thus, Plaintiff was entitled to no compensation as a result of his time spent at Fintex. Finally, because there is no evidence of what damages Plaintiff would be entitled to in the result of a breach of this theoretical agreement, any damages calculation would be too vague and speculative to support a request for damages.

### 1.    Plaintiff and Defendants Did Not Agree Upon Material Terms.

Plaintiff alleges that he and Fintex entered into a verbal employment agreement which constituted an implied contract. Doc. 1 ¶ 21. "Whereas '[a]n express contract is formed by either written or verbal communication[,] [t]he intent of the parties to an implied in fact contract is 'inferred from their acts in light of the surrounding circumstances.'" *Universal Atl. Sys. v. Honeywell Int'l, Inc.*, 388 F.Supp. 3d 417, 428 (E.D. Pa. May 14, 2019) (quoting *Ingrassia*, 486 A.2d 478 at 483 n.7). In *Universal Atl. Sys.*, the parties discussed a plan but "never reached a final, binding agreement as to what that plan would entail." 388 F. Supp. 3d at 428. The evidence included communications which demonstrated "critical issues remained outstanding" and therefore fell "short of establishing that 'both parties mutually assented to the same thing.'" *Id.* at 429 (*citing Mountain Props., Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. 2001)). The very same is true here.

Although an implied contract need not be reduced to writing, "[a]s with all contracts, however, an implied-in-fact contract exists only if 'the parties . . . agree upon the material and necessary details of the bargain[.]" *Id*. (quoting *Lombardo v. Gasparini Excavating Co*., 385 Pa. 388, 123 A.2d 663, 666 (Pa. 1956)). Indeed, for a breach of an implied contract claim to survive summary judgment, the record must establish that the parties assented to material terms sufficient to create an enforceable contract. *Id*. at 430.

4913-9848-4745, v. 2

The record here is unmistakable: Plaintiff and Fintex never agreed to the material terms of any agreement related to Plaintiff's involvement with Fintex. Like in *Universal Atl. Sys.*, the parties here demonstrated throughout their communications that critical issues remained regarding the specific terms of their purported agreement, and the evidence falls short of establishing that both parties mutually assented to the same thing. Plaintiff alleges that communications between Defendants and Plaintiff existed, which memorialized the terms of this implied agreement. Doc. 1 ¶ 21. Plaintiff also claims this agreement included terms relating to "Plaintiff's position as [a] Senior Operating Partner, compensation package, equity share, and additional benefits contingent upon performance and business outcomes." *Id.* Despite Plaintiff's contentions that discovery would unearth these material agreement terms, no such terms have been discovered. To the contrary, the evidence in this case demonstrates that the parties did not assent to material terms, such as Plaintiff's compensation.

It is undisputed that Plaintiff began his association with Fintex in the beginning of 2023. Doc. 1 ¶ 8; SMF ¶ 9. But there is no evidence that Plaintiff and Defendants discussed any specific terms regarding compensation in early 2023. In fact, the first communication regarding Plaintiff's hypothetical compensation occurs on February 14, 2023 email from Plaintiff to Weinstein. SMF ¶ 11, Exhibit I. In this email, Plaintiff states:



*Id.*

Notably, Plaintiff informs Weinstein ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ *Id.* Plaintiff unequivocally informed Weinstein that, ████████ ████████████████████████████████████████████████████████████ ████████████████████████ *See id.*; *see also* Exhibit GG at ¶ 12.

Plaintiff makes only two mentions of potential scenarios in which he expects compensation. First, he states that ███████████████████████████████████████████ *Id.* Plaintiff does not affirmatively state █████████████████████████████████████████████████ ███████████████████████████████ Instead, he ███████████████████████████ ███████████████████████████████████████ Based on this language, ███████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████. These ambiguities are left unresolved, as Weinstein did not respond to Plaintiff's February 14, 2023 email.

When critical questions remain outstanding regarding material terms of an agreement, it demonstrates that "'the parties themselves [had not] agree[d] upon the material and necessary details of the bargain.'" *Universal Atl. Sys.*, 388 F. Supp. 3d 417 at 430 (quoting *Lombardo*, 123 A.2d at 666). Indeed, such is the case here as it relates to Plaintiff's communication that he wanted ████████ ███████████████████████████████ as Plaintiff and Defendants never came to an agreement on the material and necessary details of that term.

Plaintiff's second request for compensation is ████████████████████████████████ ██████████████████████████████████████████████████████████████████ SMF ¶ 11, Exhibit I. Ostensibly, it appears that Plaintiff is requesting that ███████████████ ██████████████████████████████████████████ Although Plaintiff suggests █ ██████████████████████████████████████████████████████████████████

───────────────

[5] Although Plaintiff fails to define "T&E," we presume, given the context of the email, that "T&E" refers to travel and expenses.

[6] ██████████████████████████████████████████████████████████████████ ████████████████████ Exhibit GG at ¶ 15.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████. At best, these communications only set out the parameters of what a future agreement might look like between Plaintiff and Defendants; however, "'mere statement[s] of an aspirational goal to reach some future agreement'" are insufficient to create an enforceable agreement between the parties. *Universal Atl. Sys.*, 388 F. Supp. 3d 417 at 430 (quoting *Ecore Int'l, Inc. v. Downey*, 343 F. Supp.3d 459, 490 (E.D. Pa. Oct. 12, 2018)). These are preliminary negotiations, which are insufficient to create a binding contract. *See id.* (citing *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298 (3d Cir. 1986) ("[P]reliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract.").

The parties do not address Plaintiff's potential compensation until March 16, 2023, wherein Weinstein sends an email to Plaintiff and other individuals associated with Fintex stating:



SMF ¶ 12, Exhibit B (emphasis added).

Notably, Weinstein ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████The record establishes that, at that point, Fintex had not successfully closed any deal. *See* SMF ¶ 28, Exhibit M. To the extent that Weinstein discusses compensation in this email, it is again ambiguous as to what specific compensation individuals would receive. There is no mention of exact wages, compensation, or anything else apart from ████████████

████████████████████████████████████████*Id*. In sum, it is clear that by March 16, 2023, Plaintiff and Defendants still had not established and agreed to specific material terms related to compensation.

16

On June 5, 2023, Plaintiff expressed to Weinstein that █████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ SMF ¶ 14, Exhibit D. In response, Weinstein informed Plaintiff that █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████ SMF ¶¶ 15, Exhibit D. In response, Plaintiff assured Weinstein that ████████████ ████████████████████████████████████████████████████████████ SMF ¶ 16, Exhibit O. Finally, Plaintiff informed Weinstein that ██████████████████████████████████████ ████████████████████████████████████████ SMF ¶ 17, Exhibit O; *see also* Exhibit GG at ¶¶ 23–27.

In their June 5, 2023 exchange, the parties again failed to establish specific terms related to compensation. ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████

Perhaps most telling of all that the parties never entered into an agreement is the fact that in and around late August 2023, Weinstein ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████" *Id*. Because there is no evidence that a written partnership agreement existed between Defendants and Plaintiff, it can only be concluded that the parties scheduled this ███████████████████████████████████████████████████████████ ██████████████████████████

17

While this suggests that the parties *aspired* to meet minds regarding the material terms and, thus, create an enforceable agreement between the parties, there is no evidence that this occurred. Indeed, the record is bereft of any evidence demonstrating this meeting ever occurred during the Fintex "inaugural offsite" or that an agreement was formed between Plaintiff and Defendants. In fact, the evidence only shows that at this Fintex "inaugural offsite," Plaintiff abandoned his association with Fintex. SMF ¶ 26, Exhibit G.  As such, the evidence only reflects that Plaintiff and Defendants merely aspired to enter into an agreement at the Fintex "inaugural offsite," but they failed to enter into an enforceable agreement.

### 2.    Fintex did not breach any contract.

The second element of any breach of contract claim is that the Defendant breached a duty imposed by the contract. *See Ware*, 322 F.3d 218 at 225. In many contracts, there exists a "condition precedent." Specifically, "[t]he Supreme Court of Pennsylvania has defined a condition precedent in a contract as 'an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.'" *Mack Trucks, Inc. v. Borgwarner Turbo Sys.*, 508 Fed. App'x. 180, 183 (3d Cir. 2012) (quoting *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 559 Pa. 56, 739 A.2d 133, 139 (Pa. 1999)). In *Benchmark Group, Inc. v. Penn Tank Lines, Inc.*, the contract between the parties provided that the plaintiff was entitled to a "Success Fee" "upon the closing of a Transaction." 612 F.Supp.2d 562, 575 (E.D. Pa. Apr. 8, 2009). The court noted that "an intention to make a promise conditional may be manifested by the general nature of a promise or agreement, as well as in more formal ways" and "[a]ny words will create a condition which express, when properly interpreted, the idea that the performance of the promise is dependent on some other event." *Id.* at 576 (*quoting Nat'l Prods. Co. v. Atlas Fin. Corp.*, 364 A.2d 730, 734 (Pa. Super. 1975) *and Allegheny Cnty. V. Maryland Cas. Co.*, 32 F. Supp. 297, 300 (E.D. Pa. 1940)). The court found a condition precedent existed where the contract "clearly mandate[d]" the closing of a transaction as a condition precedent to the plaintiff's entitlement to the success fee. *Id.*

18

Here, just like *Benchmark Group, Inc.*, Fintex required a successful transaction to occur before its obligation to pay was triggered. Indeed, this is evidenced in numerous communications between Plaintiff and Weinstein throughout Plaintiff's involvement with Fintex. SMF ¶¶ 11, 12, 13, 15. For instance, in a March 16, 2023 email from Weinstein to Plaintiff (and others associated with Fintex), Weinstein specifically states ███████████████████████████████████████ ████████████████████ SMF ¶ 12 (emphasis added). Plaintiff and all of the other individuals associated with Fintex were informed that any compensation would first require a successful transaction. *See* Exhibit GG at ¶ 11; Exhibit HH at ¶¶ 6–8.

To be sure, Plaintiff undoubtedly understood this condition precedent, as demonstrated by his text messages with Weinstein on April 8, 2023. There, in a conversation regarding ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████ SMF ¶ 13, Exhibit N. In response, Plaintiff stated ████████████ ████████████████████████████████████████████████████████████ *Id*. (emphasis added). Plaintiff's response to Weinstein makes clear ████████████████████████████ ████████████████████████████

On June 5, 2023, when Plaintiff informed Weinstein that ████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ SMF ¶ 15, Exhibit D. Not only was Plaintiff reminded of this condition precedent, but clearly, he took no issue with it, as he responded with ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ SMF ¶ 16, Exhibit O.

19

The evidence in this matter overwhelmingly demonstrates that the condition precedent to any compensation was Fintex's ability to successfully close a deal, which would allow Fintex to then confer compensation to individuals who were involved in the transaction. Unfortunately, during Plaintiff's tenure with Fintex, no such deals occurred. Indeed, there is no evidence that between January 2023 and September 14, 2023 (the day Plaintiff abandoned his relationship with Fintex) any successful transaction ever occurred. SMF ¶ 29, Exhibit GG at ¶ 31. Plaintiff also understood this unfortunate reality all too well. In a September 2, 2023 text message exchange between Weinstein and James Laurie of GPN, ███████████████████████████████ SMF ¶ 24–25, Exhibits S, B, T, H. ████████████████████████████████████████████████████████ ██████ *Id*. Plaintiff understood that if he were to leave Fintex at this point, he would not be entitled to any compensation as no successful transactions had occurred.

There is no genuine dispute that for compensation to occur, a successful transaction had to occur. It is equally undisputed that during Plaintiff's tenure with Fintex, *no successful transactions occurred, and thus, no compensation was conferred to anyone.* As such, Fintex did not breach any theoretical agreement with Plaintiff by failing to confer compensation as the condition precedent was clearly not satisfied during Plaintiff's tenure with Fintex. *See Benchmark Group, Inc.*, 612 F.Supp.2d at 583 (granting summary judgment against a breach of contract claim when the agreement "clearly conditioned Plaintiff's entitlement to a success fee upon the closing of a Transaction—an event which did not occur.").

The *Benchmark Group, Inc.* court rejected the plaintiff's argument that the relevant language merely specified the timing of payment in light of the presence of a separate timing clause and the court's obligation to "read the contract in its entirety, giving effect to all of the contractual language if at all possible." *Id.* at 579. In this case, the entirety of the communications between the parties, which Plaintiff alleges give rise to a contract, demonstrate that the closing of the deal was a condition to payment, not merely a matter of timing. For example, Plaintiff himself stated that he envisioned not

20

receive any fees for due diligence prior to the closing of deals, and then, once the deals closed, he would begin earning money from the resulting portfolio companies. SMF ¶ 11, Exhibit I. Plaintiff demonstrated his understanding that the closing of deals was a condition precedent to receiving financial gain, and not merely a matter of timing.

**3.    Plaintiff's claim for damages is too speculative.**

Even if a contract did exist between Plaintiff and Defendants and Plaintiff could prove that contract was breached, Plaintiff's claim for damages is too speculative to support his breach of contract claim. "To prove damages, a plaintiff must give factfinder evidence from which damages may be calculated to a 'reasonable certainty.'" *Ware*, 322 F.3d 218 at 226 (quoting *ATACS Corp. v. Trans World Communications, Inc*., 155 F.3d 659, 668 (3d Cir. 1998)). "At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor." *Id*. (quoting *ATACS Corp.*, 155 F.3d 659 at 669). "While mathematical certainty is not required, the plaintiff must introduce sufficient facts upon which the jury can determine the amount of damages without conjecture." *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243, 1257 (1983). In *Delahanty*, for example, the appellate court modified the trial court's calculation of compensatory damages from $70,000.00 to $40,000.00 after analyzing the plaintiff's decrease in average income following the defendant's liable conduct. *Id.* at 1262.

In his Complaint, Plaintiff alleges that because of Fintex's breach of contract, he has "suffered damages in excess of $650,000, representing the value of the promised but undelivered compensation package." Doc. 1 ¶ 23. This sum comes from thin air and is unsupported by the record.

As demonstrated above, it is entirely unclear as to what the agreed upon terms of compensation were in this theoretical contract between Plaintiff and Defendants. Indeed, Plaintiff himself informed Weinstein that ██████████████████████████████████████████ ████████████████████████████████████████████████████████ SMF ¶ 11, Exhibit I. The only articulation of what type of compensation Plaintiff requested is his request ██████

21

███████████████████████████████ *Id*. Again, this amount was never agreed upon by the parties, and even if it had been, no successful transactions occurred during Plaintiff's tenure with Fintex. SMF ¶ 29, Exhibit GG at ¶ 23.

Unlike the record in *Delahanty*, the record here contains no basis for how Plaintiff arrived at his request for $650,000 in damages related to the alleged breach of contract, nor is there any evidence in the record that supports this number or any other figure. Tellingly, Plaintiff's own expert failed to opine on the damages associated with this alleged breach of contract. *See* Exhibit EE. That is because any attempt to do so would only result in speculation that is unsupported by the record evidence. Put simply, there is insufficient evidence from which damages may be calculated to a reasonable certainty as it relates to Plaintiff's breach of contract claim against Fintex.

## III.    Plaintiff cannot prove unjust enrichment.

"[T]o establish a claim for unjust enrichment, a plaintiff must prove there were '(1) benefits conferred on defendant[s] by plaintiff[s]; (2) appreciation of such benefits by defendant[s]; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant[s] to retain the benefit without payment of value[.]'" *Salvitti v. Lascelles*, 578 F. Supp. 3d 712, 723-724 (E.D. Pa. Jan. 6, 2022) (quoting *Hollenshead v. New Penn Financial, LLC*, 447 F. Supp. 3d 283, 292 (E.D. Pa. 2020)).

### A.    There is no evidence that Fintex "in fact benefitted" from Plaintiff's efforts.

Plaintiff alleges that he provided "valuable services, insights, and business opportunities to Defendant Fintex," and that he "significantly contribut[ed] to [Fintex's] operational and strategic positions without receiving the promised compensation, equity, or any form of remuneration." Doc. 1 ¶ 25. Without question, Plaintiff was involved with Fintex projects between January 2023 and September 2023. But this record contains no evidence that Plaintiff benefited.

In *Meehan v. Cheltenham Twp.*, the plaintiff sought to recover the value of labor and materials expended pursuant to a construction project for defendant when they did not have an agreement. 189

A.2d 593, 595 (Pa. 1963). The Supreme Court of Pennsylvania held that the plaintiff could not "merely allege its own loss as the measure of recovery—*i.e.*, the value of labor and materials expended—but instead must demonstrate that [defendant] *has in fact benefitted*." *Id.* (emphasis added). The court noted that when the defendant is free from fault, "the amount of recovery is generally limited by the value of the benefit." *Id.* at 595, n. 5. The court could not determine from the evidence whether the defendant had obtained any financial benefit from the plaintiff because the cost of maintaining the improvements could have offset revenues derived from them, and therefore determined that the first element of unjust enrichment was not satisfied. *Id.* at 595.

As in *Meehan*, the unjust enrichment claim fails because there is no evidence that Fintex "in fact benefitted" from Plaintiff's efforts.

**B.    Plaintiff cannot establish the value of the benefit conferred.**

In establishing an unjust enrichment claim, a plaintiff "must do more than generally show that Defendants may have benefitted in order to prove that they are entitled to collect on a claim for unjust enrichment." *Salvitti v. Lascelles*, 669 F.Supp.3d 405, 416 (E.D. Pa. Apr. 19, 2023). Instead, a plaintiff must produce evidence that shows the value of the benefit conferred. *Id.*; *see also Mitchell v. Moore*, 729 A.2d, 1200, 1203 ("Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay the plaintiff the *value of the benefit conferred*.") (emphasis added); *see also Com. v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 52 A.3d 498, 513 (Pa. Commw. 2012) (dismissing a claim for unjust enrichment where the plaintiff had failed to quantify the benefit conferred, "even with the benefit of expert testimony on damages[.]").

Here, the undisputed record establishes that Plaintiff informed Weinstein that he ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ SMF ¶ 11,

Exhibit 1. Even if Plaintiff has now changed his mind and believes he is entitled to compensation for his due diligence and consulting, as noted above, there is no evidence of the value of those "benefits"

to Fintex, which Plaintiff is required to demonstrate at this stage. As such, it is impossible to determine the value of Plaintiff's due diligence and consulting for Fintex, and the record is bereft of any details that could instruct a factfinder.

As for Plaintiff's involvement in the portfolio projects, Plaintiff requested ███████████ ████████████; however, even if Plaintiff and Defendants had agreed to that amount (which they did not), it is undisputed that no successful transactions ever occurred during his tenure at Fintex. SMF ¶ 29, Exhibit GG at ¶ 31; Exhibit HH at ¶ 8. Moreover, Plaintiff was keenly aware there would be no compensation unless deals closed. SMF ¶ 13, Exhibit N; Exhibit GG at ¶ 11;  Exhibit HH at ¶¶ 5–7. Plaintiff cannot now credibly claim that he is owed compensation for time spent on transactions that did not close. Even if he could, there is again no evidence as to what the value of this "benefit" is, which Plaintiff must demonstrate at this stage. Indeed, the record lacks any facts or evidence showing the value Plaintiff conferred onto Fintex. This is no surprise. Any deal that did not result in a successful transaction would be worth zero dollars for all parties involved. This alone defeats Plaintiff's unjust enrichment claim. *See Sciore v. Centric Bank,* No. 20-6035, 2022 U.S. Dist. LEXIS 229377, 2022 WL 17833266, at *12 (E.D. Pa. Dec. 21, 2022) (granting summary judgment for defendant on plaintiff's claim of unjust enrichment where plaintiff claimed that he benefitted defendant by recruiting employees which led to defendant's profits but failed to point to "any evidence that recruiting [another employee] generated any "actual profits" for [defendant]").

### C.    No inequity exists.

Plaintiff's unjust enrichment claim fails for another reason: there is no evidence that Fintex's lack of payment is unjust. In *Meehan,* the court noted that even under circumstances where one party benefits from the acts of the other, that fact "is not of itself sufficient to justify restitution" and "[t]here must also be an injustice in permitting the benefit to be retained without compensation." *Meehan*, 189 A.2d at 596.

Courts in Pennsylvania have found that the mere fact that a plaintiff provided unpaid services to the defendant that benefited the defendant is insufficient to establish unjust enrichment. *See, e.g.*, *Ross v. Estate of Roberts*, 305 A.3d 990 (Table), 2023 WL 5995520, at *3 (Pa. Super. Ct. Sept. 15, 2023) (citations omitted); *Henkel v. Highgate Hotels, L.P.*, No. 3:15-CV-01435, 2024 WL 4351450 at *11 (M.D. Pa. Sept. 30, 2024). The Plaintiff must establish a "reasonable expectation of payment from the defendant for the services provided" to satisfy this element. *Henkel*, 2024 WL at *11 (*citing Beemac, Inc. v. Republic Steel*, No. 2:20-cv-1458, 2023 WL 414395, at *8 (W.D. Pa. Jan. 25, 2023)); *see also King of Prussia Equip. Corp. v. Power Curbers, Inc.*, 158 F. Supp. 2d 463, 467 (E.D. Pa. 2001) (granting summary judgment for defendant because the plaintiff did not have a "reasonable expectation" of payment from the defendant and because "unjust enrichment will not be found where Plaintiff rendered services to advance its own interest.") (*citing New Tech Voting Sys., Inc. v. Danaher Corp.*, No. 95-727, 1996 WL 711272 (E.D. Pa. 1996)).

The record demonstrates that the parties knew the risks and rewards associated with Fintex. SMF ¶¶ 11-17, Exhibits B, C, D, I, N, and O. Plaintiff understood that Fintex was a business opportunity that had the potential to be fruitful but that any success required deals to close. SMF ¶ 13, Exhibit N. It is undisputed that no such deals closed during Plaintiff's tenure. SMF ¶ 29, Exhibit GG at ¶ 31; Exhibit HH at ¶ 8. It is not unjust that Plaintiff was not involved in any successful deals, nor was Fintex unjustly enriched by Plaintiff's efforts when they resulted in no profit or benefit to Fintex. *See, e.g.*, *Xu Feng v. Univ. of Delaware*, 785 Fed. App'x. 53, 57 (3d Cir. 2019) (affirming summary judgment against Plaintiff's unjust enrichment claim because "[a] university is not unjustly enriched when a student pays tuition to attend but ultimately does not receive a degree.").

Because Plaintiff understood his potential to benefit from his actions was contingent on Fintex closing deals and his continued relationship with Fintex, he had no reasonable expectation for payment after he voluntarily ended that relationship before any deals closed. Further, Plaintiff's efforts were rendered to advance his own interests—namely, the potential for him to be appointed to high-ranking

positions among Fintex's portfolio companies after deals closed. SMF ¶¶ 11, 13, Exhibits C, I and N. Accordingly, Plaintiff cannot establish Plaintiff has suffered any injustice, and his unjust enrichment claim fails.

**IV.    Plaintiff cannot prove promissory estoppel.**

A party claiming promissory estoppel must show that: (1) "the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only be enforcing the promise." *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 239 (Pa. Commw. 2017). Plaintiff cannot prove any of these elements.

**1.    Fintex made no promises to Plaintiff.**

First, the record does not contain any promises by Fintex. A promise must be sufficiently clear and definite and must indicate the intent of the parties with reasonable certainty. *C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988). A "broad and vague implied promise" does not suffice. *Id.*

The purported "promises" in the record are similar to vague, indefinite statements which the court deemed insufficient to satisfy the first element in *Ankerstjerne v. Schlumberger, Ltd.*, 155 Fed App'x 48 (3d Cir. 2005). In *Ankerstjerne*, the speaker had allegedly told the plaintiff that "it was ridiculous" plaintiff had not been compensated and that the speaker "would get it taken care of… per the terms of [plaintiff]'s compensation plan." *Id.* at 51. The Third Circuit concluded these statements were "simply too vague and indefinite to constitute a 'promise' for purposes of promissory estoppel[,]" noting that the statements did not "specify how much the plaintiff would be paid, by whom he would be paid, how payment was to be calculated, or when the plaintiff would be paid." *Id.* (internal quotations omitted).

**2.    Plaintiff did not rely on Fintex's purported statements.**

26

Even if any of Fintex's statements could be construed as a promise, the record lacks any evidence that Plaintiff took action or refrained from acting in reliance on the statement. Plaintiff's inability to establish reliance on statements made by Fintex is discussed at length in Section I.5, *supra*. In *Shoemaker v. Commonwealth Bank*, the court found reliance where the evidence showed the plaintiffs had refrained from purchasing insurance based on the defendant's promise to obtain insurance. 700 A.2d 1003, 1008 (Pa. 1997).

The same cannot be said here based on the record. To the extent that Weinstein's statements to Plaintiff constituted a "promise," they were always couched with the condition that financial gain would occur after Fintex closed deals. Plaintiff voluntarily ended his relationship with Fintex, thus knowingly abandoning his opportunity for financial gain through Fintex, more than one month before Fintex closing its first deal. SMF ¶ 28, Exhibit M. He, therefore, did not rely upon Fintex's statements regarding how he would financially benefit from Fintex closing deals.

### 3.    Enforcing the purported promises would not prevent injustice.

Finally, the record demonstrates Plaintiff cannot establish that injustice can be avoided only by enforcing the purported promises of Fintex. This element depends:

> on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise, and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant.

*Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 636 A.2d 156, 160 (Pa. 1994) (*citing* Restatement (Second) Contracts, § 90, comment b). Relevantly, in *Thatcher*, the defendant had made a representation to the plaintiff, a pharmacy, that it did not intend to open a competing pharmacy. *Id.* at 159. The Pennsylvania Supreme Court held it would be unreasonable for the plaintiff to proceed on the basis of "indefinite oral assurances" in deciding to forego its opportunity to relocate, as nothing was done to formalize the promise. *Id.* at 160. The court found the absence of a

written agreement and other formalities created evidentiary problems and rendered the terms of the agreement "vague and at risk of being misunderstood[,]" which "prevented the parties from exercising the caution demanded by a situation in which each had significant rights at stake." *Id.* at 161. The Supreme Court held that the evidence weighed against enforcing any promise made by the defendant because these circumstances resulted in the parties "[n]ot being able to appreciate the seriousness of their actions" and therefore not being deterred from making "ill-considered promises." *Id.* The statement reflected the speaker's current state of mind, was indefinite, and did not "provide any absolute guarantee of what may or may not happen in the future." *Id.* at 160, n. 7.

Specifically, to the extent that Plaintiff could expect to earn financial gain through his relationship with Fintex, Plaintiff understood that such financial gain would have only been in his capacity as co-operating partner, ████████████████████████████████████ ██████████████████████████████████████████████████████████████. SMF ¶ 11, Exhibit I. Plaintiff voluntarily ended his relationship with Fintex with the full knowledge that he was abandoning that opportunity. Plaintiff's resulting lack of financial gain, which he should have fully expected when he abandoned the opportunity to earn financial gain, is by no means an injustice.

## V.     Plaintiff cannot prove a violation of the Wage Payment Collection Law.[7]

In Count V of his Complaint, Plaintiff alleges that Defendants violated the WPCL when Fintex "failed to pay Plaintiff for all hours worked, including regular wages and overtime compensation[.]" Doc. 1 ¶ 35. It is well-established that "the WPCL provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Braun v. Wal-Mart Stores, Inc*., 2011 PA Super 121, 24 A.3d 875, 953 (Pa. Super. 2011). Additionally, "[t]o present a wage payment claim, the

---

[7] As noted above, Defendants do not move for summary judgment against Plaintiff's PMWA claim. And so this paper does not discuss whether Plaintiff qualifies as an "employee" under the WPCL. But Defendants do not concede that Plaintiff qualifies as an "employee" under the WPCL or the PMWA.

employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation." "Absent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and employer." *Id*. (citing *De Asencio v. Tyson Foods, Inc*., 342 F.3d 301, 309 (3d Cir. 2003)).

But no implied contract existed between Plaintiff and Defendants. *See*, *e.g.*, *supra* Part II.2. There was no meeting of the minds regarding the specific terms of Plaintiff's compensation. Likewise, Plaintiff can point to no evidence supporting his wages or compensation for his time at Fintex. Indeed, Plaintiff was explicit that he would not accept compensation for his due diligence work or receive consulting fees. SMF ¶ 11, Exhibit I.

Courts have held that there is "an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary" *Martin v. Little, Brown & Co*., 304 Pa.Super. 424, 450 A.2d 984, 987 (1981). Even so, "[a] promise to pay for services can only be implied, however, in circumstances under which the party rendering the services would be justified in entertaining a reasonable expectation of being compensated by the party receiving the benefit of those services." *Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P*., 132 F.Supp.3d 645, 649 (E.D. Pa. 2015).

Plaintiff understood that ███████████████████████████████████████████████ SMF ¶ 13, Exhibits C, N. And so it defies logic that Plaintiff had a reasonable expectation of compensation for his involvement in prospective deals that never materialized into actual deals.  *See*, e.*g.*, *Giuliani v. Polysciences, Inc.*, 275 F.Supp.3d 564, 579 (E.D. Pa. July 31, 2017) (granting a motion to dismiss a WPCL claim, in part, because Plaintiff had no reasonable expectation that they would be paid for accrued time based on the language of the employee handbook).

In *Blackwell-Murray v. PNC Bank*, the court granted summary judgment to the defendant on a WPCL claim because the plaintiff had failed to meet his burden that the payments were "earned" or

29

"vested under the terms of employment." 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013). The court specifically noted that "'[r]elief under the WPCL is implausible without [the] existence of a contract.'" *Id.* (*citing Scott v. Bimbo Bakeries, USA, Inc.*, No. Civ.A.10-3154, 2012 WL 645905, at *4 (E.D. Pa. Feb. 29, 2012)). Pennsylvania courts consider it "a prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid." *Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726 (M.D. Pa. 2007).

In *Lehman*, the plaintiff argued he was entitled to relief under the WPCL because the defendant had "failed to pay wages earned and due, *as mandated by federal and state law*" and requested to "recover *(statutory) wages* due to Plaintiff[.]" 532 F. Supp. 2d at 733–34. The court rejected that argument and dismissed the claim, stating that the plaintiff demonstrated "a misunderstanding of the purpose of the WPCL as it is interpreted by Pennsylvania courts" because it "does not provide relief for wages due under state or federal law." *Id.* Plaintiff's WPCL claim here fails for the exact same reason—he is unable to identify a contract setting forth the agreement on wages to be paid, and he cannot base his claim on an alleged statutory obligation to pay wages.

## CONCLUSION

Defendants request that the Court grant their motion for partial summary judgment on Counts I, II, III, IV, and V (WPCL claim).

Respectfully submitted,

MᴄNᴇᴇꜱ Wᴀʟʟᴀᴄᴇ & Nᴜʀɪᴄᴋ LLC

By:     */s/ Erik R. Anderson*
        Erik Roberts Anderson (I.D. 203007)
        Conner H. Porterfield (I.D. 330676)
        100 Pine Street, Harrisburg, PA 17101
        (717) 232-8000
        eanderson@mcneeslaw.com;
        cporterfield@mcneeslaw.com

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I served a true and correct copy of this document upon counsel of record via the Court's ECF system.

Date:    December 23, 2024                    */s/ Erik R. Anderson*
                                             Erik R. Anderson