

McNees Wallace & Nurick LLC
100 Pine Street
Harrisburg, PA 17101

**Erik Roberts Anderson**
Direct Dial: 717.237.5420
Fax: 717.237.5300
eanderson@mcneeslaw.com

January 7, 2025

*Via ECF*

The Honorable Joseph F. Leeson, Jr.
United States District Court
504 W. Hamilton Street
Allentown, PA  18101

Re:   *Smith v. The Fintex Group, LLC et al.* **(5:24-cv-02134-JFL)**

Dear Judge Leeson:

I submit this letter brief consistent with your Dec. 17 Order.[1] My Dec. 3 letter briefly describes the origin and nature of this privilege dispute.[2]

**California privilege law applies.**[3]

The attorney-client privilege "has been a hallmark of Anglo–American jurisprudence for almost 400 years." *Costco Wholesale Corp. v. Superior Ct.*, 219 P.3d 736, 741 (Cal. 2009) (quoting

---

[1] Doc. 42 § 1(b).

[2] Doc. 37 at pp. 1–2.

[3] Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Because all of Plaintiff's claims are state law claims, state privilege law applies. But what state's law? Under a choice of law analysis, California law should apply.

In *Harrisburg Authority v. CIT Capital USA, Inc.*, the court applied Pennsylvania's choice of law principles to conclude that New York privilege laws applied. The court reasoned:

> [N]either the attorneys [] nor client [] implicated in the instant privilege dispute are located in Pennsylvania. Further, there is no indication that the [attorney-client] relationship arose in Pennsylvania. Thus there are no Pennsylvania litigants seeking protection of the attorney-client privilege, meaning that application of New York's law would not impair Pennsylvania's interest in protecting its litigants.

716 F. Supp. 2d 380, 391 (M.D. Pa. 2010).

New York, the court explained, had an interest in its privilege law applying because the client was headquartered in New York, the employees receiving legal advice resided there, and many of the communications at issue occurred there. *Id.* Here, the same is true of California: Fintex is headquartered in California; Mr. Weinstein resides in California; Loeb & Loeb is headquartered in California; the attorney-client relationship was forged in California; and the client receiving the legal advice and asserting the privilege is headquartered in California.

*Mitchell v. Superior Ct.*, 691 P.2d 642, 645 (Cal. 1984)). "Its fundamental purpose 'is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters.'" *Id.* (quoting *Mitchell*, 691 P.2d at 646).

Under California law, a "client, whether or not a party, has a privilege . . . to prevent another from disclosing, a confidential communication between [the] client and lawyer[.]" Cal. Evid. Code § 954. A "'client' means a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity[.]" *Id.* § 951. And a "'confidential communication between client and lawyer' means information transmitted between a client and his . . . lawyer in the course of that relationship and in confidence." *Id.* § 952. To be a "confidential communication," it is not disclosed to any "third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted[.]" *Id.* And it "includes a legal opinion formed and the advice given by the lawyer in the course of th[e] relationship" with the client. *Id.* "The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco Wholesale Corp.*, 219 P.3d at 741.

"Where communications between a client and attorney have been disclosed to a third party, the burden is on the party asserting the privilege to show that it applies despite that disclosure." *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 632 (N.D. Cal. 2019) (citing *Behunin v. Sup. Ct.*, 215 Cal.Rptr.3d 475, 484 (Cal Ct. App. 2017)). "Disclosure of privileged communications to a third party will not destroy the privilege where" one of two conditions exist. *Id.* First, "the third party is an agent or assistant who will help to advance the litigant's interests." *Id.* (quoting *Behunin*, 215 Cal.Rptr.3d at 485). Or, second, "the third party is not in any sense an agent of the litigant or attorney but is a person with interests of his . . . own to advance in the matter, interests that are in some way aligned with those of the litigant." *Id.* (quoting *Behunin*, 215 Cal.Rptr.3d at 485).

### The "Disputed Control Group Documents"[4] are privileged and barred from disclosure.

Plaintiff contends that Defendants waived privilege as to the Disputed Control Group Documents.[5] This contention is wrong.

First, Plaintiff received these communications exclusively as a Fintex agent and co-venturer. In other words, he "further[ed] the interest of" Defendants in Defendants' "consultations" with their outside counsel, Loeb & Loeb. *See* Cal. Evid. Code § 952; *Anderson*, 329 F.R.D. at 632 (stating that the privilege is not destroyed where "the third party is an agent or assistant who will help to advance the litigant's interests." (quoting *Behunin*, 215 Cal.Rptr.3d at 485)). Likewise, by engaging in these communications, Plaintiff was "reasonably necessary for the transmission of the information or the accomplishment of the purpose for which" Defendants consulted Loeb. Cal. Evid. Code § 952.

---

[4] *See* Doc. 37 at pp. 1–2 (defining the term as "materials . . . where, at the time they were created and/or at the time Plaintiff had access to them, Plaintiff was part of [Fintex's] control group.").

[5] Doc. 43 at p. 5.

Second, federal courts across the country have held that former company agents cannot waive that entity's attorney-client privilege, even if they previously had access to the documents at issue. Consider *Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175 (D. Nev. 2008).[6] There, the plaintiff argued that the defendant-company could "not assert the attorney-client privilege against him with respect to privileged communications created [while] he was a manager and member of [the company]." *Id.* at 1177.

The court did not agree. The court concluded that the defendant-company was "the sole client[,]" and, so, it held "the attorney-client privilege." *Id.* at 1187. Thus, the plaintiff could not "access [the defendant-company's] attorney-client privileged communications." *Id.* The court reached this conclusion partly because the former manager did not sue "on behalf of [the company] or in his capacity as a former manager or officer. Rather, [he] . . . su[ed] to benefit himself individually—a perfectly acceptable position, but not one which should entitle him to [the company's] attorney-client privileged communications." *Id.* Further, the plaintiff was "now adverse to [the defendant-company] and [could] not obtain privileged documents over the objection of current management." *Id.* Finally, "even though [the former manager] would have had access to such documents during his time at [the company], he still would have been duty-bound to keep such information confidential." *Id.*

These principles apply here. Plaintiff is suing for his own benefit; he is adverse to Defendants; he was duty bound, as an agent and co-venturer, to not disclose confidential information; and Loeb & Loeb's sole client is and was Fintex. Thus, Plaintiff's erstwhile access to the Disputed Control Group Documents did not waive Defendants' privilege.[7]

---

[6] *See also Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 277 (N.D. Ill. 2004) (noting that "the reason former control group members may not waive the corporate privilege is because the privilege was never theirs in the first place—either when they were control group members, or when they left that capacity.").

[7] There is a contrary approach. In *Gottlieb v. Wiles*, the court found that a company cannot assert the attorney-client privilege to prevent a prior director from "inspecting documents generated during [his] tenure." 143 F.R.D. 241, 247 (D. Colo. 1992). The court reasoned that the situation is analogous to "when parties with a common interest retain a single attorney to represent them. When they later become adverse, neither is permitted to assert the attorney-client privilege as to communications occurring during the period of common interest." *Id.*

But courts have observed that *Gottlieb*'s approach is "discredited" and the "modern trend in caselaw" follows the *Montgomery* approach. *See Nunan v. Midwest, Inc.*, 814 N.Y.S.2d 891, 2006 WL 344550, at *7 (N.Y. Sup. 2006) (collecting cases); *Las Vegas Sands v. Eighth Jud. Dist. Ct.*, 331 P.3d 905, 913 (Nev. 2014). Another court has stated that "*Gottlieb* ma[d]e a fundamental error by assuming that for a corporation there exists a 'collective corporate client' which may take a position adverse to 'management' for purposes of the attorney-client privilege. There is but one client, and that client is the corporation." *Milroy v. Hanson*, 875 F. Supp. 646, 649 (D. Neb. 1995) (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)). "As the Supreme Court has stated, 'for solvent corporations' the 'authority to assert and waive the corporation's attorney-client privilege' rests with 'management.'" *Id.* (quoting *Weintraub*, 471 U.S. at 348–49).

There is more. In *Bushnell v. Vis Corp.*, the court adopted an approach redolent of *Montgomery*. No. C-95-04256-MHP, 1996 WL 506914, at *8 (N.D. Cal. Aug. 29, 1996). Specifically, the court found that the company "was the client" and that, "therefore, the attorney-client . . . privilege could only be waived by [the company]." *Id.* (cleaned up). A former director "had no authority to waive the attorney-client . . . privilege asserted by, [among others, the company]." *Id.* (cleaned up). The court rejected the prior director's argument that "he himself was a client." *Id.* And so, he "had no power to waive the attorney-client . . . privilege that [the company] had the ability to assert." *Id.* (cleaned up).

There is more still. Even if the Court were to apply Pennsylvania law, recent cases support the approach utilized by *Montgomery*, *Bushnell*, and so on.[8] One court dismissed "Plaintiff's arguments under *Gottlieb* . . . [as] unavailing." *Conner v. Associated Radiologists, Inc.*, No. MC 20-1420, 2021 WL 615230, at *2 (W.D. Pa. Feb. 17, 2021). Another noted "the modern view"— that when a litigant is adverse to their former company, "the privilege belongs to the corporation, and if asserted, is effective to prevent disclosure[.]" *Handy v. Delaware River Surgical Suites, LLC*, No. CV 19-1028, 2020 WL 3549203, at *1 n.1 (E.D. Pa. Feb. 6, 2020) (collecting cases, including *Montgomery*).[9]

Plaintiff's current status as a litigant adverse to Defendants, coupled with his former control-group status as a Fintex agent and co-venturer advancing Fintex's interests, confirms beyond cavil that Defendants did not waive privilege as to the Disputed Control Group Documents.

Nevertheless, to move this case forward and relieve the Court of a protracted evaluation of a multi-hundred-item privilege log, Defendants will voluntarily and completely waive this privilege and produce the Disputed Control Group Documents.[10] Defendants will also voluntarily

---

[8] The undersigned located one case that approvingly cites *Gottlieb*. *Carnegie Hill Fin., Inc. v. Krieger*, No. 99-CV-2592, 2000 WL 10446, at *2 n.2 (E.D. Pa. Jan. 5, 2000) ("While there is no clear authority in this Circuit upon which to rely, I find the court's reasoning in *Gottlieb* . . . persuasive."). But that case is over twenty years old. And far newer cases in Pennsylvania have found otherwise.

[9] Other courts have expressed support for *Montgomery's* approach. For example, one court offered the following rationale for *Montgomery*'s rule:

> A contrary rule—such as that set forth in *Gottlieb* . . . —would undermine the privilege. People may come and go within a control group, but a corporation has a legitimate expectation that a person who leaves the control group no longer will be privy to privileged information. To rule otherwise would defeat that expectation, and could chill the willingness of control group members to speak candidly on paper (or, these days, in electronic media) about privileged matters, knowing that some day one of their number may leave the control group and become adverse (whether through litigation or business activity) to the corporation.

*Dexia Credit Local*, 231 F.R.D. at 277; *see also Gilday v. Kenra, Ltd.*, No. 1:09-CV-229-TWP-TAB, 2010 WL 3928593, at *3–4 (S.D. Ind. Oct. 4, 2010) (adopting *Montgomery's* approach).

[10] *See* FINTEX_026522 – FINTEX_027629.

and nearly completely[11] waive privilege and produce documents responsive to Plaintiff's Document Request 6.[12]

And in keeping with this spirt, Defendants will also voluntarily submit supplementary responses and produce documents to satisfy Plaintiff's Proposed Order.[13] Hopefully, Plaintiff will follow suit.[14]

Happy New Year,

*/s/ Erik R. Anderson*

Erik Roberts Anderson
**MCNEES WALLACE & NURICK LLC**

cc:   All Counsel of Record (via ECF)

---

[11] Defendants' privilege log is enclosed with this letter. *See* Doc. 42 § 1(b).

[12] Bates labeled at FINTEX_027630 – FINTEX_030296.

[13] *See* Doc. 44.

[14] *See* Doc. 48.

| Bates No. | OriginalFileName | Email Sent From | Email Sent To | Email CC to | Email BCC to | Email Subject | Date Created | Custodian | File Description | Privilege | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FINTEX_029982 | RE: Smith v. The Fintex Group LLC and Andrew Weinstein | lrothenberg@loeb.com | drew@fintex.group | david@fintex.group | | RE: Smith v. The Fintex Group LLC and Andrew Weinstein | 1/22/2024 18:51 | Drew Weinstein | Microsoft Outlook Note | Attorney Client | Comms. between Defendants and counsel regarding threat-of-litigation/settlement-demand letter from Plaintiff's counsel |
| FINTEX_029982 | RE: Smith v. The Fintex Group LLC and Andrew Weinstein | drew@fintex.group | lrothenberg@loeb.com | david@fintex.group | | Re: Smith v. The Fintex Group LLC and Andrew Weinstein | 1/22/2024 7:09 PM | Drew Weinstein | Microsoft Outlook Note | Attorney Client | Comms. between Defendants and counsel regarding threat-of-litigation/settlement-demand letter from Plaintiff's counsel |
| FINTEX_029982 | RE: Smith v. The Fintex Group LLC and Andrew Weinstein | lrothenberg@loeb.com | drew@fintex.group | | | Re: Smith v. The Fintex Group LLC and Andrew Weinstein | 1/22/2024 1:55 PM | Drew Weinstein | Microsoft Outlook Note | Attorney Client | Comms. between client and counsel regarding threat-of-litigation/settlement-demand letter from Plaintiff's counsel |
| FINTEX_029982-029983 | RE: Smith v. The Fintex Group LLC and Andrew Weinstein | david@fintex.group | drew@fintex.group | lrothenberg@loeb.com | | Re: Smith v. The Fintex Group LLC and Andrew Weinstein | 1/22/2024 1:09 PM | Drew Weinstein | Microsoft Outlook Note | Attorney Client | Comms. between Defendants and counsel regarding threat-of-litigation/settlement-demand letter from Plaintiff's counsel |
| FINTEX_029983-029984 | RE: Smith v. The Fintex Group LLC and Andrew Weinstein | drew@fintex.group | lrothenberg@loeb.com | | | RE: Smith v. The Fintex Group LLC and Andrew Weinstein | 1/22/2024 10:25 AM | Drew Weinstein | Microsoft Outlook Note | Attorney Client | Comms. between Defendants and counsel regarding threat-of-litigation/settlement-demand letter from Plaintiff's counsel |